**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

```
_____
                                 :
JERMAX, INC. d/b/a GULF &        :
NORTHERN TRADING CORP.,          :
                                 :      Civil Action No.
               Plaintiff,        :      09-cv-4438 (NLH)(KMW)
                                 :
        v.                       :      OPINION
                                 :
AK STEEL CORPORATION             :
                                 :
               Defendant.        :
_____:
```

**APPEARANCES**:

Arthur Joel Abramowitz, Esquire
Cozen O'Connor, PC
Liberty View, Suite 300
457 Haddonfield Road
P.O. Box 5459
Cherry Hill, NJ 08002-2220
*Attorney for Plaintiff Jermax, Inc.*

Matthew A. Cuomo, Esquire
and
Sara R. David, Esquire
Cuomo, LLC
9 East 38th Street
New York, NY 10016
*Attorneys for Defendant AK Steel Corporation*

**HILLMAN, District Judge**

        Plaintiff, Jermax, Incorporated ("Jermax")[1] and defendant,

AK Steel Corporation ("AK Steel"), entered into contractual

agreements for the sale and purchase of stainless steel products.

_____

        [1] Jermax conducted business as "Gulf & Northern Trading
Corporation," but for purposes of this Opinion, the Court will
continue to refer to the party as Jermax unless otherwise
specified.

After AK Steel ceased its sale of steel to Jermax, however, Jermax filed suit in the Superior Court of New Jersey, alleging breach of contract and breach of the covenant of good faith and fair dealing.  The matter was removed to this Court.  Meanwhile, AK Steel brought its own case in the Federal District Court for the Southern District of Ohio.  Jermax now moves before this Court to enjoin AK Steel's Ohio action.  At the same time, AK Steel cross-moves to dismiss Jermax's complaint for failure to state a claim.

For the following reasons expressed, Jermax's Motion to Enjoin the Ohio Action is denied, and AK Steel's Cross-motion to Dismiss is denied.

## I.   JURISDICTION

This Court exercises subject matter jurisdiction over the underlying claim pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties in the underlying action. Plaintiff, Jermax, is incorporated in the State of New Jersey with its principal place of business in Camden, New Jersey. Defendant, AK Steel, is incorporated in the State of Delaware with its principal place of business in West Chester, Ohio.  The amount in controversy may reasonably exceed $75,000.[2]

---

[2] Jermax's complaint filed in the New Jersey state court does not specify the amount in controversy.  But, as AK Steel correctly opines, "a reasonable reading of the value of the rights being litigated" suggests that the amount in controversy may exceed $75,000.  Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d

## II.  BACKGROUND

In or around 2006, Jermax, a stainless steel processor and reseller, began to purchase stainless steel products from AK Steel, a producer and wholesaler of stainless steel.[3]  To effectuate these sales, Jermax would send purchase orders, specifying terms and conditions, to AK Steel, who then would confirm the orders by way of order acknowledgments, enunciating its own terms and conditions.  During December 2008 and January 2009, however, Jermax defaulted on its payments to AK Steel.  Nevertheless, AK Steel agreed to continue its business dealings with Jermax, but by virtue of Jermax's defaults on previous payments, AK Steel demanded that Jermax pay the purchase prices for stainless steel orders on a "cash in advance" basis.[4]  Jermax accepted the condition.

---

Cir. 1993).  For example, Jermax requests compensatory and punitive damages for AK Steel's alleged refusal to fill an order for over 500,000 pounds of stainless steel products and to continue to deal with Jermax as agreed by the parties.  Jermax does not dispute that those averments reasonably suggest an amount in controversy in excess of $75,000.

[3] To the extent that the Court must address AK Steel's Cross-motion to Dismiss, Jermax's allegations are accepted as true and viewed in a light most favorable to plaintiff, as is required when reviewing a motion to dismiss.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

[4] According to AK Steel, officials from Jermax and AK Steel reached this agreement during meetings held on March 3, 2009 and April 22, 2009, respectively.  As part of their agreement, both parties would continue to negotiate in good faith to settle Jermax's preexisting debt to AK Steel.

In light of this new agreement, Jermax continued to place orders with AK Steel. AK Steel filled a number of these orders, and consistent with its contractual obligations, Jermax paid for the purchases with "cash in advance." However, in 2009, Jermax placed orders with AK Steel for more than 500,000 pounds of stainless steel products. Although AK Steel initially accepted and acknowledged Jermax's offers of purchase, it later refused to fill the orders. Moreover, AK Steel refused to continue to sell its stainless steel products to Jermax altogether.[5]

On or around July 31, 2009, Jermax filed suit in the Superior Court of New Jersey, alleging breach of contract and breach of the covenant of good faith and fair dealing. Within a month, AK Steel removed Jermax's suit to this Court on the grounds of diversity jurisdiction. Further, AK Steel filed a suit in the Federal District Court for the Southern District of Ohio on or about August 24, 2009, seeking, among other things, $2,980,026.47, the amount allegedly owed by Jermax for the stainless steel products it received. In the complaint, AK Steel set forth causes of action for breach of contract, action on

---

[5] In an e-mail dated July 8, 2009, an AK Steel credit manager informed the president and chief executive officer of Gulf & Northern Trading Corporation ("GNTC") that AK Steel could not accept or fill any more orders until GNTC paid its outstanding balance or proposed an acceptable repayment plan. Soon thereafter, in an e-mail dated July 24, 2009, the AK Steel credit manager explained to the GNTC president and CEO that if GNTC did not pay its outstanding balance by August 4, 2009, AK Steel would pursue collection.

account, action for goods sold, unjust enrichment, and fraudulent transfer.

As a result of AK Steel's suit, Jermax moves this Court to enjoin the Ohio action.  Conversely, AK Steel seeks to dismiss Jermax's claims against it.

Presently before this Court are both Jermax's Motion to Enjoin the Ohio Action and AK Steel's Cross-motion to Dismiss.

## III. DISCUSSION

### A.   Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings

5

give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984) (citation and internal quotation marks omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)). Under the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis. First, a claim's factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Id.; see Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)

6

("The Supreme Court's Twombly formulation of the pleading
standard can be summed up thus: 'stating . . . a claim requires a
complaint with enough factual matter (taken as true) to suggest'
the required element.  This 'does not impose a probability
requirement at the pleading stage,' but instead 'simply calls for
enough facts to raise a reasonable expectation that discovery
will reveal evidence of' the necessary element." (quoting
Twombly, 550 U.S. at 556)).  The defendant bears the burden of
showing that no claim has been presented.  Hedges v. U.S., 404
F.3d 744, 750 (3d Cir. 2005).[6]

**B.   AK Steel's Cross-motion to Dismiss**

The Court will first address AK Steel's Cross-motion to
Dismiss.  AK Steel argues that Jermax fails to set forth a cause
of action upon which relief may be granted.  In particular, AK
Steel asserts that, in December 2008 and January 2009, Jermax
failed to pay for AK Steel's products and, consequently, incurred
debt nearing $3 million.  Although the parties continued their

---

[6] In ruling on a Rule 12(b)(6) motion to dismiss, a court has
"discretion to address evidence outside the complaint . . . ."
CitiSteel USA, Inc. v. GE, 78 F. App'x 832, 835 (3d Cir. 2003)
(citation and internal quotation marks omitted).  As such, "a
court may examine the facts as alleged in the pleadings as well
as matters of public record, orders, exhibits attached to the
complaint, and items appearing in the record of the case."
Tilbury v. Aames Home Loan, 199 F. App'x 122, 125 (3d Cir. 2006)
(citation and internal quotation marks omitted).  In addition,
the court "may consider an undisputedly authentic document that a
defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document."  CitiSteel USA, 78
F. App'x at 835 (citation and internal quotation marks omitted).

business relationship for several months through their "cash in advance" agreement, AK Steel ultimately ceased their dealings because, says AK Steel, Jermax no longer negotiated in good faith to pay its outstanding debt.  For those purchase orders that were acknowledged but never filled, AK Steel contends that Jermax never tendered payment in advance, as required by the parties' agreement, and AK Steel therefore was not obligated to fulfill its end of the bargain.  Further, AK Steel claims that it exercised its right, as stipulated in its order acknowledgments, to terminate the parties' contractual relationship on the basis of Jermax's prior breaches,[7] i.e., inability or refusal to pay for previous shipments and to negotiate in good faith for the

---

[7] In particular, AK Steel relies on the following provision in its "CONDITIONS OF SALE," which are appended to the order acknowledgments:

> **8.   PAYMENTS AND INTEREST ON PAST DUE ACCOUNTS.**  Customer represents that Customer is solvent and can and will pay for the products sold to Customer in accordance with the terms hereof.  If Customer shall fail to comply with any provision or to make payments in accordance with the terms of this contract or any other contract between Customer and Seller, Seller may at its option defer shipments or, without waiving any other rights it may have, terminate this contract.  All deliveries shall be subject to the approval of Seller's Credit Department.  Seller reserves the right before making any delivery to require payment in cash or security for payment, and if Customer fails to comply with such requirement, Seller may terminate this contract.

settlement of outstanding debt.  For those purchase orders that were not acknowledged, AK Steel continues, no contracts existed, and thus, AK Steel incurred no obligations or liabilities.

Regarding the acknowledged purchase orders, Jermax argues that whether or not it complied with the parties' agreement and paid "cash in advance" is a disputed question of fact that cannot be resolved at the pleadings stage of litigation.  Further, Jermax contends that as a result of the "battle of the forms," the termination clause in AK Steel's order acknowledgment was not part of the parties' agreement and, thus, is ineffectual.  With respect to the unacknowledged orders, Jermax submits, the parties agreed that so long as Jermax paid cash in advance for the steel products, AK Steel was required to acknowledge and fill the orders.  Consequently, Jermax asserts that AK Steel's refusal to accept Jermax's offers with order acknowledgments was, in and of itself, a breach of the parties' contractual agreement.

For the sake of simplicity and clarity, the Court will address each category of purchase orders in turn.

### 1.   Acknowledged Purchase Orders

Both parties agree that the sales at issue were to be made on a "cash in advance" basis.  Accordingly, a typical transaction would involve Jermax submitting a purchase order.  AK Steel would then confirm the order via an order acknowledgment.  Thereafter, Jermax would have to pay for the goods before AK Steel would

deliver them.

The Court agrees with Jermax that the actual sequence of events, and whether Jermax paid in advance or was afforded an adequate opportunity to do so, is a question of fact that may necessitate discovery and is unsuited for resolution at this time -- especially given the favorable presumption accorded to Jermax's allegations at this stage of litigation. Correspondingly, a question of fact exists as to whether AK Steel justifiably refused to fill the orders it acknowledged or whether it breached its agreement with Jermax.

As for the applicability of the termination clause in AK Steel's order acknowledgments, on which AK Steel relies, the Court must look to the provisions of the Uniform Commercial Code ("UCC"), specifically UCC § 2-207.[8]  UCC § 2-207(1) reads:

> A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, <u>unless acceptance is expressly made conditional on assent to the additional or different terms</u>.[9]

---

[8] Notwithstanding any conflicts of law, both the states of New Jersey and Ohio have adopted the relevant UCC provisions at issue in this case.

[9] In 2003, amendments were made to UCC 2-207.  However, neither New Jersey nor Ohio have adopted those amendments; rather, their statutes, with only minor alterations, reflect the former version of UCC 2-207.  Likewise, Jermax refers to the former version of UCC 2-207 in its brief.  Therefore, the Court, too, will rely on the language of the former version of UCC 2-

(Emphasis added); see N.J.S.A. 12A:2-207(1); Ohio Rev. Code §
1302.10(A).  In this case, AK Steel's order acknowledgment
explicitly predicates acceptance on the customer's assent to AK
Steel's terms and conditions, and further rejects any additional
or different terms proposed by the customer.[10]  However, Jermax's
purchase order explicitly reserves any agreement to its own terms
and conditions, and further rejects any additional or different
terms proposed by the seller.[11]  Nothing before the Court

---

207.  See St. Francis Home Med. Equip., L.L.C. v. Sunrise Med.
HHG, Inc., 2009 U.S. Dist. LEXIS 69740, at *15 n.6 (N.D. Okla.
Aug. 10, 2009); Verasun Fort Dodge, L.L.C. v. Indus. Air Tech.
Corp., 2008 U.S. Dist. LEXIS 99292, at **55 & 56 n.5 (N.D. Iowa
Nov. 25, 2008).  It is worth noting, however, that even if the
current, unadopted version of UCC 2-207 were controlling, the
result in this case would likely be the same.  See Stoughton
Trailers, L.L.C. v. Arcelormittal Dofasco, Inc., 2008 U.S. Dist.
LEXIS 28914, at *20 (W.D. Wisc. Apr. 8, 2008).

[10] In its "CONDITIONS OF SALE," AK Steel stipulates to the
following:

> 1.  **ACCEPTANCE**. . . . ALL CUSTOMER ORDERS AND
> ACCEPTANCES ARE EXPRESSLY CONDITIONED UPON
> ASSENT TO THE TERMS AND CONDITIONS PRINTED
> HEREON AND THE 2008/2009 CONTRACTUAL SUPPLY
> AGREEMENT.  TERMS ADDITIONAL TO OR DIFFERENT
> FROM THOSE IN THESE CONDITIONS OF SALE ARE
> REJECTED.

[11] As part of its "Terms and Conditions of Purchase Order,"
Jermax submits the following:

> **Acceptance**
> Commencement of performance pursuant to this
> Purchase Order constitutes acceptance hereof
> by Seller.  Acceptance of this Purchase Order
> is expressly limited to the terms and
> conditions set forth herein.  Any terms or

11

suggests that, upon receiving AK Steel's order acknowledgment, Jermax altered its position as stated in its purchase order and agreed to the additional and different terms set forth in the order acknowledgment.

Consequently, because AK Steel's confirmation of the sale was expressly conditioned upon Jermax's acceptance of the additional and different terms set forth in the order acknowledgment, and because Jermax did not unequivocally accept those terms, the parties did not reach a binding agreement in accordance with the plain language of the parties' proposed contracts.  See, e.g., White Consol. Indus., Inc. v. McGill Mfg. Co., 165 F.3d 1185, 1190-92 (8th Cir. 1999); Dresser Indus., Inc. v. The Gradall Co., 965 F.2d 1442, 1449 (7th Cir. 1992).  Under such circumstances, however, UCC § 2-207(3) applies.  It provides:

> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms

> conditions set forth in a confirmation of this Purchase Order, or any other instrument issued by Seller, that are additional to or different from the terms and conditions set forth herein are rejected, and [Jermax] will not be bound thereby unless it agrees to such additional or different terms and conditions, in writing.

12

> incorporated by any other provisions of [the UCC].

See N.J.S.A. 12A:2-207(3); Ohio Rev. Code § 1302.10(C).

Here, it is unclear whether the parties' conduct recognized the existence of a contract. Arguably, the exchange of a purchase order and an order acknowledgment, consistent with the parties' prior dealings and any overarching agreement they may have shared, may have constituted such conduct.[12]  Indeed, neither party challenges the notion that a binding contract was created by the parties' actions. Regardless, AK Steel's termination clause did not constitute part of any contract between the parties. Moreover, whether the parties conducted themselves in accordance with an agreement to buy and sell stainless steel products is a factual question that cannot be resolved at this time.

Accordingly, the Court cannot say that Jermax and AK Steel did not enter into a legally enforceable agreement regarding the acknowledged orders for stainless steel, nor can the Court conclude at this time whether AK Steel breached that agreement. Jermax, therefore, has pled a potentially viable cause of action.

### 2.   Unacknowledged Purchase Orders

---

[12] By the fact that AK Steel distinguishes between acknowledged and unacknowledged purchase orders, it appears that AK Steel may concede that issuing an order acknowledgment, in light of the parties' prior dealings, evinces a contractual agreement under UCC § 2-207(3).

As far as the unacknowledged purchase orders are concerned, AK Steel explains cogently that Jermax's offer to purchase goods does not, in and of itself, establish a contract.  Absent some sort of response to evince an acceptance of Jermax's offer, AK Steel surmises, there is no legally enforceable contract upon which Jermax may sustain a lawsuit.

Indeed, UCC 2-206(a) provides that "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances."  See N.J.S.A. 12A:2-206(1)(a); Ohio Rev. Code § 1302.09(A)(1).  Moreover, UCC 2-206(b) elaborates:

> an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods, but such a shipment of non-conforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

See N.J.S.A. 12A:2-206(1)(b); Ohio Rev. Code § 1302.09(A)(2). From these UCC provisions, it is clear that, generally speaking, a purchase order is merely an offer, and only upon acceptance of that offer, in the form of a promise or an affirmative action, is a contract created.

However, both parties recognize that a meeting was held on April 22, 2009, during which they agreed to continue their business relationship while also attempting to settle Jermax's

debt to AK Steel.  Jermax suggests that during this meeting, the parties entered into an overarching, legally enforceable agreement whereby AK Steel obligated itself to fill Jermax's orders as long as Jermax paid for the steel products in advance.

Again, the Court is not in a position at this stage of litigation to determine the validity of Jermax's claims.  Were Jermax correct, however, that the parties had an overarching agreement requiring the fulfillment of any orders made by Jermax, a potentially viable cause of action could exist.  Of course, AK Steel's position -- that is, it need not accept or fill any particular orders upon the parties' inability to reach a debt settlement agreement -- is entirely plausible.  Whether Jermax's claims could survive subsequent motions is uncertain.  The Court merely cannot, and thus will not, decide this dispute at this time.  Consequently, Jermax may proceed with its claims against AK Steel.

For the reasons stated above, AK Steel's Motion to Dismiss is denied.

### C.   Jermax's Motion to Enjoin

Jermax requests that this Court enjoin the prosecution of AK Steel's case in the Federal District Court for the Southern District of Ohio.  In support of its argument, Jermax points out that the present suit was filed before the Ohio suit, that the parties in both cases are identical, and that the claims asserted

15

in each case are substantially related to the same subject matter and, in accordance with Federal Rule of Civil Procedure 13(a) and New Jersey's entire controversy doctrine, should have been brought as compulsory counterclaims in this suit.  In opposition, AK Steel reiterates that Jermax's claims are meritless and should be dismissed.  Further, AK Steel submits that the present litigation in this Court is frivolous and intended merely as a preemptive strike against AK Steel and the colorable claims it is pursuing in its Ohio action.[13]

The "first-filed" rule provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it." EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (citation and internal quotation marks omitted).  The purposes of the doctrine are to

_____

[13] AK Steel also argues that the first-filed rule is not dispositive here because the parties agreed that the federal court in Ohio is the proper forum for any disputes, as stipulated in the forum selection clause set forth in AK Steel's order acknowledgments.  However, for the same reasons that the Court denies AK Steel's Motion to Dismiss, the forum selection clause is not part of the parties' agreement and, thus, is not controlling.  See Insteel Wire Prods. Co. v. Dywidag Sys. Int'l USA, Inc., 2009 U.S. Dist. LEXIS 64899, at **8-13 (M.D.N.C. Jul. 28, 2009) (finding that forum selection clause did not become a term of the parties' agreement because offeror never accepted the clause set forth in offeree's sales order acknowledgment); Statewide Aquastore, Inc. v. Pelseal Tech., LLC, 2008 U.S. Dist. LEXIS 34687, at **9-11 (N.D.N.Y. Apr. 28, 2008) (same).  More specifically, Jermax never expressly agreed to AK Steel's forum selection clause, as evinced by the inclusion of Jermax's own forum selection clause, identifying New Jersey as the proper forum, in its purchase offers.

"encourage[] sound judicial administration and promote[] comity among federal courts of equal rank." Id.  As such, the rule "counsel[s] trial judges to exercise their discretion by enjoining subsequent prosecution of 'similar cases . . . in different federal district courts.'" Id. (citations omitted). In light of these principles, courts applying the first-filed rule "have the option to dismiss, stay, or transfer the later filed action." Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., 416 F. Supp. 2d 1048, 1052-53 (E.D. Pa. 2006).

Although limited in nature, exceptions to the first-filed rule exist and, under the circumstances of a particular case, may excuse adherence to the rule.  Among those factors or instances justifying a departure from the first-filed rule are rare or extraordinary circumstances, inequitable conduct, bad faith, forum shopping, where the second suit has advanced further than the first suit, or "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." EEOC, 850 F.2d at 972, 976.  "Exceptions to the first-filed rule are not rare and are made when justice or expediency requires, including when the first-filed action is the result of forum shopping and if the balance of convenience favors the second forum." Drugstore-Direct, Inc. v. The Cartier Div. of Richemont N. Am., Inc., 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004) (citation and internal

quotation marks omitted).

Jermax correctly asserts that the present suit was filed before AK Steel's suit in the Southern District Court of Ohio. The present suit commenced in the New Jersey Superior Court on July 31, 2009, and was later removed to this Court on August 26, 2009. AK Steel's Ohio suit was not filed until August 24, 2009. For purposes of the first-filed rule, the significant date to consider is the day when the original suit was initially filed, whether that be in a federal court or a state court. See Photomedex, Inc. v. St. Paul Fire & Marine Ins. Co., 2009 U.S. Dist. LEXIS 65335, at *12 n.5 (E.D. Pa. Jul. 28. 2009) (noting that, when deciding the applicability of the first-filed rule, "there are sound policy reasons for using the date of the state court filing rather than the date of removal for purposes of establishing chronology in cases like this"); Feinstein v. Brown, 304 F. Supp. 2d 279, 282 (D.R.I. 2004) (noting that for purposes of first-filed rule, there is "'ample authority for the proposition that the state court filing date is the relevant benchmark'" (quoting Mfrs. Hanover Trust Co. v. Palmer Corp., 798 F. Supp. 161 (S.D.N.Y. 1992))). That the original suit began in state court and was removed to federal court is immaterial; the first-filed rule still looks to the original date of filing. Because Jermax commenced its action in New Jersey Superior Court before AK Steel filed its action in the federal court in Ohio,

Jermax's suit is deemed as the first filed.  Further, it is undisputed that both parties in the present suit -- Jermax and AK Steel -- are the same parties in the Ohio suit.

Apart from other considerations, however, the Third Circuit has narrowly construed the first-filed rule, holding that the rule applies only where the two proceedings are "truly duplicative," that is, where both the first- and later-filed cases are "materially on all fours" with one another.  Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 333 n.6 (3d Cir. 2007) (citation and internal quotation marks omitted); see Photomedex, Inc., 2009 U.S. Dist. LEXIS 65335, at *13 (same); Kedia v. Jamal, 2007 U.S. Dist. LEXIS 30343, at *8 (D.N.J. Apr. 25, 2007) (stating that "the Third Circuit Court of Appeals has interpreted the 'first-filed' rule narrowly, holding that it only applies to 'truly duplicative' proceedings").  "[T]he issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other."  Grider, 500 F.3d at 333 n.6.

Undoubtedly, Jermax's present suit and AK Steel's suit in Ohio implicate the parties' overall business relationship and their transactions, including Jermax's accrual of debt.  However, the Court cannot conclude that the actions are "truly duplicative," whereupon a decision in one case will "leave[] little or nothing to be determined in the other."  Grider, 500

F.3d at 333 n.6.  For example, in this case, Jermax's allegations of breach of contract and breach of the covenant of good faith and fair dealing are predicated upon AK Steel's refusal to fill or acknowledge purchase orders following the parties' meeting on April 22, 2009.  The entire basis for Jermax's suit, therefore, arises from the parties' April meeting, their transactions thereafter, and AK Steel's refusal to sell any stainless steel products to Jermax in mid-2009.  Conversely, AK Steel's claims of breach of contract, action on account, action for goods sold, and unjust enrichment, stem from Jermax's failure to pay for goods furnished during December 2008 and January 2009.  As such, AK Steel's case concentrates on the parties' transactions prior to the April meeting and Jermax's refusal or inability to pay for goods it already received.

Consequently, though there may be some overlap between the facts and issues relating to these distinct suits, an adjudication of Jermax's claims will not entirely resolve the merits of AK Steel's claims.[14]  More to the point, AK Steel also alleges that Jermax fraudulently transferred its assets in order to hinder, delay, or defraud AK Steel.  To address this claim, the parties will have to explore facts and evidence completely

---

[14] Whether either party may assert a defense that will significantly implicate the subject matter of the other pending suit is beyond the Court's realm of knowledge at this time and, thus, cannot substantially affect this decision.

unrelated to anything asserted in Jermax's complaint before this
Court.  Accordingly, the Court concludes that under the Third
Circuit's narrow interpretation, the first-filed rule does not
govern this case.

Moreover, even if the parties' proceedings here and in Ohio
were "truly duplicative," the first-filed rule still would not
apply because of the anticipatory filing exception to the rule.
See EEOC, 850 F.2d at 976.  AK Steel insists that Jermax's
present suit was filed in bad faith and in anticipation of
imminent legal proceedings in Ohio.  As part of its cross-motion,
AK Steel points to an e-mail dated July 24, 2009 and sent from an
AK Steel credit manager to the president and chief executive
officer of Gulf & Northern Trading Corporation ("GNTC").[15]  In
the e-mail, AK Steel reminded GNTC of its debt and stated the
following:

> AK Steel has made every attempt to collect
> this debt in the normal course of business but
> has not received any acceptable commitment
> from Gulf & Northern Trading Corp. to pay the
> monies due from them.
>
> Therefore, AK Steel must demand that if a
> payment in the amount of $2,988,679.99 is not
> received in our offices by August 4, 2009,
> that AK Steel will pursue collection of this
> amount through any and all means available.
>
> It is unfortunate that this type of action has
> become necessary and I would hope that your

---

[15] As mentioned at the outset of this Opinion, Jermax does
business as Gulf & Northern Trading Corporation.

payment is received by August 4, 2009.
A week after its receipt of AK Steel's letter, and several days
before the August 4th deadline, Jermax filed suit in the New
Jersey Superior Court on July 31, 2009.  AK Steel then filed its
own suit in Ohio on August 24, 2009.

Based on this sequence of events, preceded and informed by
the parties' ongoing negotiations to settle the preexisting debt,
it appears that Jermax commenced its New Jersey action in
anticipation of AK Steel's own imminent pursuit of legal recourse
in another forum.  See Pittsburgh Logistics Sys., Inc. v. C.R.
Eng., Inc., 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009) (explaining
that courts in the Third Circuit have found bad faith or
anticipatory filing, in contravention of the first-filed rule,
when "the parties had been in settlement negotiations and one
party had given the other a deadline by which the dispute was to
be resolved as an alternative to litigation," but "the opposing
party preemptively filed suit shortly before the deadline");
Auto. Serv. Ass'n of N.J., Inc. v. Rockland Exposition, Inc.,
2008 U.S. Dist. LEXIS 104212, at **11-12 (D.N.J. Dec. 12, 2008)
(refusing to apply first-filed rule because of anticipatory
filing, and collecting cases that departed from first-filed rule
on grounds of anticipatory filing); FMC Corp. v. AMVAC Chem.
Corp., 379 F. Supp. 2d 733, 744 (E.D. Pa. 2005) ("[A] second-
filing party may have a strong case that the initial filing is

22

improper if the first-filing party initiated its suit within the response period provided in a recent . . . letter."); see also Champion Labs., Inc. v. Burch, 2006 U.S. Dist. LEXIS 84892, at *6 (S.D. Ill. Nov. 21, 2006) (stating that first-filed rule does not apply when "the plaintiff in the first-filed action raced to the courthouse to avoid litigating in another forum" or when "the first-filed action is trivial in relation to the second-filed action" (citation and internal quotation marks omitted)).[16] Accordingly, Jermax should not benefit from the first-filed rule.

Finally, the Court recognizes the import of Federal Rule of Civil Procedure 13(a).  Rule 13(a) provides:

> A pleading must state as a counterclaim any claim that -- at the time of its service -- the pleader has against an opposing party if the claim:

_____

[16] The Court also acknowledges the role of 28 U.S.C. § 1404 in determining the first-filed rule's applicability.  "On a motion to dismiss or stay under the first-to-file rule, a court must take into account the same factors as those used in a motion to transfer pursuant to 28 U.S.C. § 1404(a)," including the convenience of the parties and witnesses, the interest of justice, and certain "private and public interests."  Maximum Human Performance, Inc. v. Dymatize Enters., 2009 U.S. Dist. LEXIS 76994, at **8-10 (D.N.J. Aug. 27, 2009); see Nature's Benefit, Inc. v. NFI, 2007 U.S. Dist. LEXIS 62871, at *8 (D.N.J. Aug. 27, 2007) (same).  "If the factors balance in favor of the first to file rule, then a court may properly dismiss, stay or transfer the second-filed action to avoid duplicative litigation under its inherent powers."  Maximum Human Performance, 2009 U.S. Dist. LEXIS 76994, at *8-9 (quoting Nature's Benefit, 2007 U.S. Dist. LEXIS 62871, at *9).  Here, however, neither party expressly addresses the factors germane to Section 1404(a).  As such, the Court cannot weigh the relevant factors to aid in its decision concerning the first-filed rule.

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

Like the first-filed rule, the policies underlying Rule 13(a) are judicial economy, efficient administration, and the avoidance of multiple, expensive judicial proceedings.  Transam. Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002).  In essence, Rule 13(a) requires the filing of any claims that bear "a logical relationship to an opposing party's claim," thereby rendering those claims compulsory.  Id. (citation and internal quotation marks omitted).  "[A] logical relationship between claims exists where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts," and thus, the "claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties."  Id. (citations and internal quotation marks omitted).  "However, the first-filed rule and the compulsory counterclaim principles are not distinct, and the existence of a separate suit does not guarantee dismissal."  PPL Energy Servs. Holdings, Inc. v. Zoot Props., LLC, 2006 U.S. Dist. LEXIS 61796, at *26 (E.D. Pa. Aug. 31, 2006) (citing Handy v. Shaw, Bransford,

Veilleux & Roth, 325 F.3d 346, 350 (D.C. Cir. 2003)).[17]

Because of the distinctions between Jermax's present suit and AK Steel's Ohio suit, the Court cannot conclude at this time -- relying almost exclusively upon the parties' complaints -- that the two cases are so logically related that they will require "substantial duplication of effort and time."  See AcademyOne, Inc. v. CollegeSource, Inc., 2009 U.S. Dist. LEXIS 25083, at **7-8 (E.D. Pa. Mar. 23, 2009) (finding no logical relationship, where only the complaints had been filed, because, even though both cases involved the same parties and competitive relationship, the actions are separate and distinct and can proceed simultaneously without substantial duplication, and "we will not base a determination under the Compulsory Counterclaim Rule on speculation as to how these cases will develop in the future"); see also CertainTeed Corp. v. Nichiha USA, Inc., 2009 U.S. Dist. LEXIS 101354, at **8-11 (E.D. Pa. Oct. 30, 2009) (finding that separate cases "are not so logically related . . . such that separate trials would require substantial duplication

---

[17] Because the Court addresses the compulsory nature of AK Steel's claims in light of Federal Rule of Civil Procedure 13(a), it need not consider the possible application or effect of New Jersey's entire controversy doctrine.  That said, the Court is not convinced that New Jersey's own unique doctrine in any way governs which federal district court should hear a case when suits have been filed in concurrent federal forums.  Cf. Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999) ("The entire controversy doctrine is an affirmative defense . . . .").

of efforts" (citation and internal quotation marks omitted)).

Certainly, both cases will involve the business relationship and

transactions between the parties, but by and large, those facts

appear undisputed.  As explained above, the present suit will

likely necessitate an examination of the parties' meeting on

April 22, 2009 and their subsequent dealings.  The Ohio suit will

likely focus on the parties' transactions prior to the April

meeting and will also explore the allegations that Jermax

fraudulently transferred its assets to its affiliates, including

Amerinox Processing, Inc. -- a claim entirely separate and

independent of Jermax's allegations and causes of action.

Accordingly, the compulsory counterclaim rule does not require

dismissal of AK Steel's Ohio action at this time.[18]  See 6

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

Practice and Procedure § 1410.1 (2010) (stating that "a

counterclaim based on a different contract between the same

parties may not meet the [logical-relationship] standard."

---

[18] While we do not retreat from our decision, the Court
acknowledges that litigation in this court and the federal court
in Ohio could generate unnecessary costs and expenses and
conflicting rulings.  Pursuing all of the parties' claims in a
single forum may prove advantageous for the litigants, avoid the
possible perils of preclusion, and promote judicial economy.
Accordingly, nothing in this Opinion is intended to prejudge the
Southern District of Ohio's consideration of the scope and
continued viability of its own case, our future consideration of
the proper scope of this case including the possible expansion of
claims, or the consideration by either court, upon proper motion,
of the propriety of transferring one of these cases to the other
district.

(footnote omitted)).

     Therefore, given the Third Circuit's interpretation of the first-filed rule, the distinctions between the parties' two judicial proceedings, and the uncertainties surrounding these cases that cannot be resolved at this time, the Court will refrain from enjoining AK Steel's Ohio suit.  Thus, for reasons explained above, Jermax's Motion to Enjoin is denied.

**IV.**  **CONCLUSION**

     For the foregoing reasons, Jermax's Motion to Enjoin is denied.  Further, AK Steel's Cross-motion to Dismiss is denied.  An Order consistent with this Opinion will be entered.


Dated:   June 24, 2010       /s/ NOEL L. HILLMAN
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.